847 So.2d 617 (2003)
Reginald SIMPSON, et al.
v.
PEP BOYS-MANNY MOE & JACK, INC., et al.
No. 2003-C-0358.
Court of Appeal of Louisiana, Fourth Circuit.
April 10, 2003.
*619 Gregory P. Di Leo, New Orleans, LA, for Plaintiffs-Respondents.
Thomas J. Eppling, Julie Ann Steed, Staines & Eppling Metairie, LA, for Defendants/Relators.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge DENNIS R. BAGNERIS Sr., Judge EDWIN A. LOMBARD).
DENNIS R. BAGNERIS Sr., Judge.
On January 17, 2003, the trial court denied the relators', The Pet BoysManny, Moe & Jack, Inc. and Phillip Dussett's, motion for a stay of proceedings pending arbitration. For the following reasons, we find that the relators waived their rights to arbitration, and the application is denied.

FACTS
On December 18, 1995, upon being hired by Pep BoysManny, Moe & Jack, Inc., ("Pep Boys") as an installer, the plaintiff, Reginald Simpson ("Simpson"), signed a mutual agreement to arbitrate claims. The mutual agreement to arbitrate claims reads in pertinent part as follows:
I recognize that differences may arise between The Pep boysManny, Moe and Jack and/or its subsidiary company, The Pep boysManny, Moe and Jack of California, ("the Company") and me during or following my employment with the Company, and that those differences may or may not be related to my employment. I understand and agree that by entering into this Agreement to Arbitrate Claims ("Agreement"), I anticipate gaining benefits of a speedy, impartial dispute resolution procedure.
* * *

Claims Covered by the Agreement
The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), whether or not arising out of my application for employment, my employment or the termination of my employment that the Company may have against me or that I may have against the Company or against its officer, directors, employees or agents in their capacity as such or otherwise. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, or medical condition, handicap or disability); claims for benefits, (except where an employee benefit or pension plan specifies that its claims procedure shall culminate in an arbitration procedure different from this one), and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded in the following paragraph.

Claims Not Covered by the Agreement
Claims I may have for workers' compensation or unemployment compensation benefits are not covered by this Agreement.
Also not covered are claims by the Company for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information, as to which I understand and agree that the Company may seek and obtain relief from competent jurisdiction.

*620 * * *

Discovery
Each party shall have the right to take the deposition of any individual and any expert witness designated by another party. Each party also shall have the right to propound requests for production of documents to any party. The subpoena right specified below shall be applicable to discovery pursuant to this paragraph. Additional discovery may be had only where applicable to discovery pursuant to this paragraph. Additional discovery may be had only where the Arbitrator selected pursuant to this Agreement so orders, upon a showing of substantial need.
* * *

Subpoenas
Each party shall have the right to subpoena witnesses and documents for arbitration.
* * *

Judicial Review
Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award....
* * *

Requirements for Modification or Revocation
This Agreement to arbitrate shall survive the termination of my employment. It can only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify this Agreement.
On January 29, 2000, Simpson was involved in an altercation at work with co-worker Phillip Dussett ("Dussett"). In June 2000, Simpson filed a lawsuit for compensatory damages against Dussett and Pep Boys.[1] Simpson's wife, Terry Simpson, ("Mrs.Simpson") filed a loss of consortium claim as part of her husband's lawsuit. (Collectively, Mr. and Mrs. Simpson shall be referred to as the "plaintiffs").
In September 2000, Pep Boys and its insurance carrier, Travelers, answered and discovery commenced. On September 19, 2000, Pep Boys served interrogatories on Simpson. The plaintiffs also allege that Pep Boys propounded a second set of interrogatories.[2] On December 19, 2001, the plaintiffs served Pep Boys with interrogatories and a request for production of documents. The plaintiffs allege that they could not serve Dussett due to Pep Boys difficulty in locating his personnel file and due to Pep Boys providing the spelling of his name as "Doucet". On April 17, 2002, the plaintiffs served Dussett; and on June 14, 2002, Dussett answered the suit. On June 26, 2002, the plaintiffs served Dussett with interrogatories and a request for production of documents. The parties agree that they have conducted depositions of several witnesses.
On August 30, 2002, the defendants served a motion to stay the trial court proceedings pending arbitration. On January 17, 2003, a hearing was held on the motion to stay, which the trial court denied without written reasons.

DISCUSSION
This court recently reiterated the proper standard of review for a trial court *621 decision based on interpretation of a contract as follows:
The issue of whether or not the language of a contract is ambiguous is an issue of law subject to de novo review on appeal. Orleans Parish School Board v. City of New Orleans, 96-2664 (La.App. 4 Cir. 9/3/97), 700 So.2d 870. "In the interpretation of contracts, the trial court's interpretation of the contract is a finding of fact subject to the manifest error rule." Grabert v. Greco, 95-1781, (La.App. 4 Cir. 2/29/96), 670 So.2d 571, 573. In applying the manifest error rule to the trial court's interpretation, the Court of Appeal may not simply substitute its own view of the evidence for the trial court's view, nor may it disturb the trial court's finding of fact so long as it is reasonable. Syrie v. Schilhab, 96-1027, (La.5/20/97), 693 So.2d 1173. In such cases, appellate review of questions of law is simply to determine whether the trial court was legally correct.
Lakeland Anesthesia, Inc. v. CIGNA Healthcare of LA, Inc., XXXX-XXXX, p. 3 (La.App. 4 Cir. 2/6/02), 812 So.2d 695, 697-698, quoting Bartlett Construction Co., Inc. v. St. Bernard Parish Council, 99-1186 (La.App. 4 Cir. 5/31/00), 763 So.2d 94.
The right to demand arbitration is strong under federal and state law. Collins v. Prudential Ins. Co. of America, 99-1423, p. 2-3 (La.1/19/00), 752 So.2d 825. La. R.S. 9:4201 provides that when a contract contains an arbitration provision the provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." When a court determines that a matter pending before it is "referable to arbitration under an agreement in writing for arbitration," and a party has requested a stay of the proceeding in order to submit its claims to arbitration, the court must stay the proceeding to allow arbitration. La. R.S. 9:4202. Louisiana courts, including this Court, have determined that, in spite of La. R.S. 9:4201's provision that an arbitration clause is irrevocable, a party's conduct can effect a waiver of its right to demand arbitration. (See e.g. Thomas v. Desire Community Housing Corp., 98-2097 La. App. 4 Cir. 8/10/00), 773 So.2d 755. Waiver of arbitration, however, is not a favored finding, and there is a presumption against waiver. Rauscher Pierce Refsnes, Inc. v. Flatt, 93-1672, p. 5 (La.App. 4 Cir. 2/11/94); 632 So.2d 807, 810. The burden of proof to establish waiver of arbitration is heavy, and the party seeking to establish waiver must show that it has been prejudiced by the actions of the party requesting arbitration. Rauscher, 93-1672, p. 5, 632 So.2d 807, 810.
The relators argue that Simpson's suit should be stayed because of the executed mutual agreement to arbitrate. First, the relators argue the arbitration agreement is a valid and enforceable contract under Louisiana law. Second, the relators argue that they did not waive their right to arbitrate. Third, the plaintiffs' claim against Dussett is also subject to arbitration, and Dussett has a separate right to demand arbitration. The plaintiffs argue in response that the relators have, first and foremost, waived their right to arbitration. In addition, the plaintiffs argue that the arbitration contract is a contract of adhesion that should not be enforced.

Whether the Arbitration Agreement is an Enforceable Contract
The relators assert that the arbitration agreement is an enforceable contract under Louisiana law. The plaintiffs argue that it is a contract of adhesion, in which Pep Boys attempts to bind employees to arbitrate all conceivable claims while it remains free to resort to ordinary *622 litigation for the only type of claim it would probably bring against an employee. Although the Federal Arbitration Act applies to this contract, state law governs questions of enforceability and validity of the contract itself. Gill v. Jim Walker Homes of Louisiana, Inc., 01-CA-2479 (W.D.1/31/02), 187 F.Supp.2d 618. Louisiana courts have found that "[g]enerally speaking, a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party." Welch v. A.G. Edwards & Sons, Inc., 95-2085, p. 7 (La.App. 4 Cir. 5/15/96), 677 So.2d 520, 524-525, citing Golz v. Children's Bureau of New Orleans, Inc. 326 So.2d 865, 868 (La.1976). In Golz, the Louisiana Supreme Court found that contracts of adhesion, which are often in small print, "sometimes raise a question as to whether or not the weaker party actually consented to the terms" but such contracts are not per se unenforceable. Golz, 326 So.2d 865, 869.
Simpson argues that the arbitration agreement is unenforceable as a contract of adhesion because Pep Boys reserved to itself the right to litigate claims for injunctions or other equitable relief for claims of unfair trade practices, unauthorized disclosure of trade secrets and/or confidential information. Simpson characterizes these claims as the most conceivable type of claim by Pep Boys against its employees. Simpson cites in support of this argument Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc., 2000-511 (La.App. 3 Cir. 12/13/00), 776 So.2d 589, in which the court found a standard contract used by Bellsouth to be adhesionary. The clause was in "exceedingly small print"; the customers were in no position to bargain over the arbitration provision; and the substance of the arbitration provision was "unduly burdensome and extremely harsh". Sutton's Steel & Supply, Inc., 2000-511, p. 10, 776 So.2d 589, 596-597. The court focused on Bellsouth's reservation of its right to litigate a claimed "debt", undefined in the agreement and easily construed to apply to any action imaginable by Bellsouth against the plaintiffs, and the limitation on the plaintiffs to only seek relief under the arbitration clause for any claims they may have. Sutton's Steel & Supply, Inc., 2000-511, p. 10, 776 So.2d 589, 596-597.
The relators argue that Sutton's Steel & Supply, Inc. is not applicable to the arbitration agreement in the instant case. We agree. First, the arbitration agreement signed by Simpson was not in small print; rather, it is a separate agreement in standard type. Second, Simpson had the option of not signing the agreement and finding work at another automotive repair shop if he did not wish to be bound to arbitration. Third, the terms of the arbitration agreement are not unduly burdensome or extremely harsh. The agreement specifies that essentially all claims between Simpson and Pep Boys will be resolved by arbitration. The only exceptions are claims that are statutorily barred from arbitration ("worker's compensation or unemployment benefits") and claims requiring injunctive relief (unauthorized disclosure of trade secrets and other confidential information). Although the relators argue that injunctive relief is more quickly obtained through the court system, this is true for preliminary injunctions but is debatable for permanent injunctions. More importantly, however, the relators argue that a retail automotive repair shop such as Pep Boys is more likely to face and bring claims for negligence, theft, conversion, and employment disputes than trade secrets. Such claims would fall into the categories of claims that are covered by the arbitration agreement, and Pep Boys would be required to arbitrate those *623 claims. Employer and employee both agreed to severe limits on the right to litigate the majority of claims they may have against each other. Thus, we find that the arbitration agreement is not unconscionably inequitable and is enforceable under Louisiana law.

Whether Relators Waived Their Rights to Arbitration
Because we find that the arbitration agreement is an enforceable contract in Louisiana, the next issue to address is whether the relators waived their right to arbitration. The relators argue that the issue of whether Pep Boys waived arbitration is separate from the issue of whether Dussett waived arbitration. The plaintiffs make no such distinction. After an examination of the applicable law and the parties' arguments, waiver by Pep Boys and waiver by Dussett will be evaluated separately.
Neither the answering of a judicial demand nor a delay in filing a demand for arbitration alone necessarily constitutes a waiver of the right to demand arbitration, especially in the absence of prejudice to the opposing party. Moore v. Automotive Protection Corp., 97-0623, p. 3 (La.App. 4 Cir. 5/21/97), 695 So.2d 550, 551-552. The waiver of a party's right to require arbitration by instituting court action will depend on the circumstances of each case, and whether the party indeed abandoned his right to insist upon arbitration by resorting to court procedure. Moore, 97-0623, p. 3, 695 So.2d 550, 551-552.
The relators argue that the proper test to determine whether a party has waived its right to arbitration turns on the issue of prejudice and is found in Rauscher:
Waiver of arbitration is not a favored finding and there is a presumption against it. Miller Brewing Co. v. Fort Worth Distributing, 781 F.2d 494, 496 (5th Cir.1986). Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party. Miller at 497. A party asserting waiver bears a heavy burden of proof to show that the opponent has waived a contractual right to arbitrate. Walker v. J.C. Bradford & Co., 938 F.2d 575, 579 (5th Cir.1991); Electrical Instrumentation Unlimited v. McDermott, 627 So.2d 702 (La.App. 4 Cir.1993). The party invoking waiver must prove prejudice. Britton v. Co-Op Banking Group, 916 F.2d 1405, 1412 (9th Cir.1990). Participation in litigation standing alone will not constitute waiver. Frye v. Paine, Webber, Jackson & Curtis, Inc., 877 F.2d 396, 398 (5th Cir.1989). Litigation in court is only a factor to be considered but is not determinative of whether arbitration has been waived. Electrical & Instrumentation v. McDermott, supra.

Rauscher, 93-1672, p. 5, 632 So.2d 807, 810. That is, participation in litigation is not enough to show waiver of a party's arbitration rights. Applying this test to the facts of this case, the relators argue that the plaintiffs invoked the power of the district court and that their own participation in the litigation was essentially defensive. Thus, the relators conclude, the minimal discovery conducted within the district court case could have been conducted within an arbitration proceeding and staying the district court case in order for arbitration to commence would not prejudice the plaintiffs.
The plaintiffs focus on the test adopted by this Court in Thomas v. Desire Community Housing Corp., 1998-2097 (La. App. 4 Cir. 7/19/00), 773 So.2d 755. In Thomas, this court again recognized that there is a strong public policy in Louisiana favoring the enforcement of arbitration clauses and also recognized that arbitration *624 is a substitute for litigation and that its purpose is to settle disputes in a fast, inexpensive manner before a tribunal chosen by the parties. Thomas, 1998-2097, p. 7, 773 So.2d 755, 759. This Court went on to apply the following test from Ritzel Communications, Inc. v. Mid-American Cellular Telephone Co., 989 F.2d 966, 968-969 (8th Cir.1993) to find waiver of the right to arbitration where the party claiming the right to arbitrate: (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts. Thomas, 1998-2097, p. 10, 773 So.2d 755, 760-761. That is, prejudice to the other party is a factor to be considered but is not determinative of the issue of waiver.

Waiver by Pep Boys
Applying the Thomas test to the facts of the instant case, we find that Pep Boys waived their right to arbitration. First, Pep Boys knew of the arbitration agreement because it drafted the agreement for its new employee Simpson to sign. Second, Pep Boys acted inconsistently with that right by participating in the litigation process for over two years, including discovery sufficient for the parties to set a trial date, before asserting its right to arbitration by filing a motion to stay. Third, to force the plaintiffs to arbitrate at this point would result in prejudice. Pep Boys obtained answers to interrogatories otherwise prohibited by the arbitration agreement, and moved for a stay of the trial court proceedings only after taking advantage of the more extensive discovery process. Under the arbitration agreement, depositions and requests for production of documents are allowed, but "additional discovery may be had only where the Arbitrator selected pursuant to this Agreement so orders, upon a showing of substantial need." The relators went beyond the bounds of discovery permissible in the arbitration agreement by propounding interrogatories. Prejudice would also result by forcing the plaintiffs to give up their set trial date in favor of commencing an arbitration proceeding. Had Pep Boys more timely asserted their right to arbitration, the purpose of arbitration as a speedy alternative to litigation could have been met. Thus, we find that Pep Boys waived its right to arbitrate.

Waiver by Dussett
Dussett was served with the lawsuit in April 2002 and answered in June 2002. The motion to stay followed in August 2002. The delay in serving Dussett was due to Pep Boys being unable to located Dussett's personnel file, which contained the proper spelling of his name. The arbitration agreement covers "all claims ... that I may have against the Company, or against its officers, directors, employees or agents in their capacity as such or otherwise...." The relators argue that the plaintiffs' claims against Dussett should be arbitrated and that Dussett clearly took no action to waive that right. The relators characterize Dussett as a third party beneficiary to the arbitration agreement between Pep Boys and Simpson. The relators, however, offer no jurisprudence or code authority for this argument and the plaintiffs do not address this issue in their opposition.
This Court recently reiterated the requirements for proving that one is a third-party beneficiary of a contract as follows:
Under Louisiana law, a contract for the benefit of a third party is referred to as a stipulation pour autri. See, e.g. Whitney National Bank v. Howard Weil Financial Corp., 93-CA-1568 (La.App. 4 Cir.1/27/94), 631 So.2d 1308, 1310 ... "In order to establish a stipulation pour *625 autri there must be a clear expression of intent to benefit the third party. The third party relationship must form the consideration for a condition of the contract; the benefit may not be merely incidental to the contract." State, In re Adoption of S.R.P., 555 So.2d 612, 618 (La.App. 4 Cir.1989). A contract, in order to constitute a stipulation pour autri, must be "in writing and clearly manifest an intention to confer a benefit upon a third party". DePaul Hospital v. Mutual Life Ins. Co., 487 So.2d 143, 146 (La. App. 4 Cir.1986).
Lakeland Anesthesia, Inc. v. CIGNA Healthcare of LA, Inc., XXXX-XXXX, 10-11 (La.App. 4 Cir. 2/6/02), 812 So.2d 695, 702, citing Concept Design, Inc. v. J.J. Krebs & Sons, Inc., 96-1295 (La.App. 4 Cir.3/19/97), 692 So.2d 1203. The arbitration agreement in Stadtlander v. Ryan's Family Steakhouses, Inc., 34-384, p. 5 (La.App. 2 Cir. 4/4/01) 794 So.2d 881, is an example of a clear third party beneficiary contract. The arbitration agreement at issue was between a potential employee and an arbitration firm: the agreement specifically stated that the potential employer was a third party beneficiary and also stated that every potential employee was a third party beneficiary of every other potential employee's arbitration agreement. Thus the court found that the intended benefit to third parties was not merely incidental.
In contrast, the arbitration agreement in the instant case is between Simpson and Pep Boys only. There is no written indication of any third party beneficiary. Thus, the arbitration agreement executed between Pep Boys and Simpson does not meet the test of a contract for the benefit of a third party, and the relators' argument that Dussett's right to demand arbitration is independent of Pep Boys is, therefore, without merit.
In conclusion, although we find that the arbitration agreement is enforceable under Louisiana law, we find that the relators waived their rights to arbitration.
WRIT DENIED.
NOTES
[1] A copy of the answer is not attached to the application, but the plaintiffs assert that Pep Boys requested a jury trial in its answer.
[2] A copy of the second set of interrogatories is not provided.