MARION F. EDWARDS, Judge.
 

 [ ¡¡Defendant-appellant, Kimberly Maxwell (“Maxwell”), appeals her conviction for aggravated battery, a violation of LSA-R.S. 14:34. Following a plea of not guilty, she proceeded to a bench trial after waiving her right to a jury. The trial judge found Maxwell guilty as charged and sentenced her to three years at hard labor, which was suspended in favor of three years of active probation. As a condition of probation, the trial judge ordered Maxwell to serve one year at home incarceration.
 

 The charge stems from a fight that occurred on May 21, 2007 between Jesusita Berrios (“Berrios”), Brittney Jones (“Jones”), Maxwell, and Maxwell’s sister. Berrios, the victim, testified that she came home from the store that day to find a car blocking her driveway. She honked her
 
 *77
 
 horn, flashed her light, and motioned for the car to move. The car was moved and Berrios was able to pull into her driveway. She opened her ear door and leaned over to the passenger’s side to get some shopping bags. As she exited the car, she was grabbed by the hair, wrestled down, and pulled toward the street. The perpetrators punched her in the [¡¡back, head and neck. Berrios explained she was face down during the attack and was unable to see who attacked her, but she testified she saw two pairs of female feet.
 

 The victim testified she heard someone scream, “[D]on’t let that b*tch go.” As she was dragged toward the street, she and the perpetrators fell over a curb. When they fell, Berrios saw a crowbar and grabbed it. She testified that she believed she had been hit by the crowbar prior to finding it on the ground, stating that she felt one blow that burned the entire right side of her neck. Berrios started swinging the crowbar around while trying to escape the perpetrators. She received minor injuries from the attack for which she did not seek medical treatment, including scrapes on her knees, scratches on her face and wrists, bruises on her arms, a bump on her head, and hair torn from her scalp. Berrios further testified that she and Jones had been friends about a year before the incident and admitted they had been involved in a verbal altercation about three months earlier. However, she denied that this altercation occurred immediately prior to the attack.
 

 The victim’s sister, Julianna Berrios (“Julianna”), testified that she was inside the house when she realized that her sister was outside being beaten. Julianna stated that she ran outside to help and saw three girls, one of whom was Maxwell, punching her sister in the head, pulling her hair, and kicking her. She saw Maxwell swinging a crowbar. Julianna explained that she tried to stop the fight, but Maxwell hit her in the face and Jones hit her from behind. She testified that, at some point, the three girls jumped in their car and left.
 

 A neighbor, Jerry Perkins (“Perkins”), testified he came home to find three girls attacking the victim. He stated that the victim was holding her baby at the time. According to Perkins, Maxwell went back and forth from the car, and came out of the car holding a tire iron rod. He saw Maxwell hit the victim with it. He |4then stated the victim picked up the tire rod after Maxwell dropped it and tried to defend herself.
 

 Maxwell had a different version of events. She testified that she, her sister, and Jones went to the victim’s house to get money from Berrios’ brother, who was friends with the father of Jones’ baby. According to Maxwell, Berrios pulled up in her car, exited, and started cursing at them. Maxwell explained that the victim and Jones had a physical altercation the day before. She testified that the victim pulled a crowbar from the backseat of her car and wielded it at her, hitting her a couple of times in the head. While Maxwell denied ever touching the crowbar, she admitted grabbing the victim’s hair and punching her in the face, claiming that it was in self defense.
 

 On appeal, Maxwell argues the evidence was insufficient to support her conviction for aggravated battery; that is, that the State did not prove beyond a reasonable doubt that she wielded the crowbar and hit the victim with it. She maintains that the only witness who testified she hit the victim with the crowbar, Perkins, was not credible. Maxwell contends several portions of his testimony were inconsistent with the evidence, challenging that portion of Perkins’ testimony where he testified the victim was holding her child in her arms during the attack.
 
 *78
 
 Maxwell correctly asserts the victim herself denied holding a child during the attack.
 

 Additionally, Maxwell alleges the victim’s injuries are inconsistent with having been hit with a crowbar. She points to the fact the victim did not require medical attention as opposed to herself, who required two stitches to her head. She further urges that Perkins was confused as to the name of the victim and maintains that Perkins’ testimony was the result of a confused state or delusional recollection. |BShe, thus, argues the trial court erred in relying on Perkins’ testimony to support her conviction.
 

 A battery is defined, in part, as the intentional use of force or violence upon the person of another. LSA-R.S. 14:33. Aggravated battery is a battery committed with a dangerous weapon. LSA-R.S. 14:34. In order to convict Maxwell of aggravated battery, the State was required to prove: 1) the she intentionally used force or violence against the victim, 2) the force or violence was inflicted with a dangerous weapon, and 3) the dangerous weapon was used in a manner likely to cause death or great bodily harm.
 
 [1]
 

 The State presented the testimony of the victim and two eyewitnesses. In finding Maxwell guilty, the trial court stated that the testimony of the victim and of Maxwell was “not totally convincing.” However, the court found the testimony of Julianna and Perkins convincing, finding that the latter testified in good faith and as accurately as possible as to what he saw.
 

 In challenging Perkins’ credibility, Maxwell first argues his testimony that she hit the victim with a crowbar is questionable because the victim did not require medical treatment, seeming to suggest that the lack of serious injury negates any testimony that the victim was hit with a crowbar. Aggravated battery does not require the infliction of serious bodily harm but rather only requires physical contact, whether injurious or merely offensive.
 
 [2]
 
 The absence of a serious injury does not disprove the occurrence of offensive conduct.
 

 Maxwell also challenges Perkins’ credibility on the basis he was confused about the name of the victim. Perkins referred to the victim variously as “Mingy” and “Monji,” admitting he did not know the victim’s real name. He did state that Rhe lived next door to “Monji and them.” However, Perkins’ reference to the victim as “Monji” was consistent with Maxwell’s testimony wherein she referred to the victim as “Monji.” The record as a whole shows the victim was also known as “Mon-ji” and, thus, there was no confusion as to the victim’s identity.
 

 Maxwell’s strongest challenge of Perkins’ testimony is based on the fact he repeatedly stated that the victim held a child, “Little Craig,” in her arms during the altercation. Maxwell maintains this testimony was uncorroborated and, in fact, contradicted by the victim’s own testimony. Because of this inconsistency, Maxwell urges that Perkins’ entire testimony should be disregarded, characterizing it as bizarre and the product of a very confused mind.
 

 The only child to whom Berrios referred was her six-year-old daughter who witnessed part of the attack, and she, as well as Maxwell, denied that she was holding a child during the fight: However, the majority of Perkins’ testimony was corrobo
 
 *79
 
 rated by the other witness the court found credible, Julianna. Perkins testified, as did Julianna, that three girls were involved in the attack on the victim and that Maxwell had a crowbar. Although Julianna did not see Maxwell hit the victim with the crowbar, she did testify that Maxwell was swinging the crowbar during the attack. Julianna herself became involved in the altercation at some point in an attempt to protect her sister and was hit in the face. Additionally, Berrios described the sensation she felt when she believed she was hit by the crowbar. The record shows the victim’s six-year-old child witnessed a portion of the attack and, thus, was present at the scene. We find the contradicted portion of Perkins’ testimony does not render his entire testimony implausible. Whether the 17victim was holding a child before, at the time of, or after the attack is inconsequential as the elements of aggravated battery were corroborated.
 
 [3]
 

 The requirement enunciated in
 
 Jackson v.
 
 Virginia
 
 [4]
 
 that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to “ ‘the actual trier of fact’s rational credibility calls, evidence weighing and inference drawing.’ ”
 
 [5]
 
 The trier of fact can accept or reject, in whole or in part, the testimony of any witness.
 
 [6]
 
 It is not the appellate court’s function to re-evaluate the credibility of witnesses or reweigh the evidence.
 
 [7]
 
 Here, the trial court found the testimony of Perkins and Julianna convincing so as to support the conclusion that Maxwell wielded and struck Berrios with the crowbar. We find the record supports that determination so as to satisfy the
 
 Jackson
 
 standard of review. This assignment of error is without merit.
 

 In accordance with LSA-C.Cr.P. art. 920, we review all appeals for errors patent on the face of the record. The State notes in its brief that Maxwell received an illegally lenient sentence because the trial court suspended the sentence and placed Maxwell on probation. The State correctly asserts that Maxwell’s sentence cannot be suspended because she was convicted of a crime of violence. LSA-C.Cr.P. art. 893 governs the suspension of a sentence and probation in a felony case. Article 893(A) prohibits the suspension of a sentence for a conviction of certain enumerated crimes of violence, including aggravated battery. The trial judge, thus, imposed an illegal sentence when it suspended Maxwell’s sentence Rand placed her on probation. Consequently, we vacate the sentence imposed and remand the case for re-sentencing.
 

 Additionally, Maxwell was not advised of the two-year prescriptive period within which to file an application for post-conviction relief in accordance with LSA-C.Cr.P. art. 930.8. Upon remand, the trial court is reminded to inform Maxwell of the two-year prescriptive period as required by Article 930.8.
 

 For the foregoing reasons, the conviction is affirmed. Maxwell’s sentence for aggravated battery is vacated' as illegally
 
 *80
 
 lenient, and the case is remanded for re-sentencing in accordance with this opinion.
 

 AFFIRMED; REMANDED WITH INSTRUCTIONS FOR RE-SENTENCING.
 

 [1]
 

 .
 
 State v. Edwards,
 
 06-643 (La.App. 5 Cir. 3/27/07), 957 So.2d 185, 189,
 
 writ denied,
 
 08-1988 (La.8/29/08), 989 So.2d 110.
 

 [2]
 

 .
 
 Id.
 

 [3]
 

 .
 
 Compare, State v. Mussall,
 
 523 So.2d 1305 (La.1988);
 
 State v. Perron,
 
 94-761 (La.App. 4 Cir. 12/27/96), 686 So.2d 994,
 
 writ denied,
 
 97-90 (La. 1/24/97), 686 So.2d 869.
 

 [4]
 

 . 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
 

 [5]
 

 .
 
 State v. Marcantel,
 
 00-1629, p. 9 (La.4/3/02), 815 So.2d 50.
 

 [6]
 

 .
 
 State v. Delagardelle,
 
 06-898, p. 8 (La.App. 5 Cir. 4/11/07), 957 So.2d 825, 830,
 
 writ denied,
 
 07-1067 (La. 11/21/07), 967 So.2d 1154.
 

 [7]
 

 .
 
 State v. Taylor,
 
 07-474 (La.App. 5 Cir. 12/27/07), 975 So.2d 10, 14,
 
 writ denied,
 
 08-224 (La.9/19/08), 992 So.2d 949.